IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

EOD
08/14/2006

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 05-41750 |
| DANIEL J. FAGAN, | § | Chapter 7 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| CHASE MANHATTAN BANK USA, N.A., | § | Adversary No. 05-04140 |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| DANIEL J. FAGAN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**[1]

This matter is before the Court upon the COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF A DEBT (the "Complaint") filed by Chase Manhattan Bank USA, N.A. ("Chase") to determine the dischargeability, under section 523(a)(2)(A) of the Bankruptcy Code, of certain credit card obligations incurred by Daniel J. Fagan (the "Debtor"). The Complaint asserts that such debts were obtained by false pretenses, false representations or actual fraud. A trial on this matter was held March 12, 2006.

Based upon the Court's consideration of the pleadings, evidence, stipulations, and argument of counsel, the Court issues the following findings of fact and conclusions of law pursuant to FED. R. CIV. P. 52, as incorporated herein by FED. R. BANKR. P. 7052. Items identified herein as findings of fact may also be construed as conclusions of law and are adopted as such. Items identified herein as conclusions of law may also be construed as findings of fact

---

[1] This Memorandum Opinion is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case, or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

and are adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or requested by any party. This decision disposes of all issues pending before the Court.

## I. JURISDICTION

The Court has jurisdiction to consider the Complaint pursuant to 28 U.S.C. §§ 157 and 1334. The Court has authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding under 28 U.S.C. §157(b)(2)(I) and (O).

## II. FACTUAL AND PROCEDURAL BACKGROUND

1. The Debtor is 60 years old and has been employed with Heartland Marketing for eight (8) years. According to the Debtor's Schedules, his gross annual salary at the time he filed for bankruptcy was approximately $65,000. According to his Statement of Financial Affairs, the Debtor's wife had gross income of $44,288 for 2004, the year preceding the bankruptcy filing.

2. The Debtor began experiencing financial difficulty in or around 2002. The Debtor's Schedules reflect that at the time of the bankruptcy filing, the Debtor had amassed $102,966 in unsecured revolving credit obligations. The Debtor was unaware of the required minimum monthly payments with respect to these unsecured credit accounts.

3. The Debtor's Schedule I reflects that the Debtor's net monthly income at the time of filing was $4,428. The Debtor's Schedule J reflects that the Debtor's monthly expenses at the time of filing were $5,514, exclusive of any payment on unsecured credit debt.[2] The Debtor

---

[2] Payments on unsecured debts are not reported as expenses on Schedule J because generally those obligations are discharged through the bankruptcy proceeding and, as such, do not constitute monthly expenses of the Debtor after commencement of the case.

testified that his income and expenses at the time of the bankruptcy filing was substantially similar to his financial situation from December of 2004 through the Petition Date.

4.  One of the Debtor's credit cards was issued by Chase at some point in or around 1996 (the "Mastercard").

5.  The relationship between the Debtor and Chase is governed by the Chase VISA/Mastercard Credit Agreement (the "Credit Agreement"), which provided that the Debtor promised to pay for all charges incurred and agreed to pay at least the minimum payment for each billing cycle.[3] The Credit Agreement also provides that "[a]s permitted by law, you agree to pay all reasonable attorney fees, court costs and other collection costs actually incurred by us in the collection of any amounts you owe us under this Agreement."

6.  The Debtor credited his financial difficulties with a gradual loss of income over the years coupled with an increase in expenses, including alimony and support for his college aged child. In 2004, the Debtor met with a bankruptcy attorney to discuss the nature of the proposed changes to the Bankruptcy Code, because the Debtor had heard the news about the law changing and thought he should "look into it."

7.  Prior to December of 2004, the Debtor was making only the required minimum payments on his credit card accounts. At trial, the Debtor was unable to recall the monthly total of all such minimum payments because his wife paid the bills.

8.  In December of 2004, the Debtor's wife lost her job. At this time, the Debtor's total monthly expenses exceeded his household income by more than $1,000, without including any allowance for payments due on the more than $100,000 in credit card debt. At about this

---

[3] The Credit Agreement provides that "[y]ou promise to pay us for all … Purchases and Cash Advances, any Finance Charges and Other Charges provided for under this Agreement, and any other amounts that you may owe us. … All payments must be made by you and received by us in accordance with the payment instructions that appear on your periodic statements. … Each month, you may pay all or any part of your balance, except you must pay us at least your minimum payment by the Payment Due Date."

time, the Debtor was able to negotiate a reduced alimony schedule with his ex-wife, because he was unable to fulfill that obligation in full.

9. In January of 2005, the Debtor used the Mastercard account to pay various expenses. The Debtor incurred miscellaneous charges in the amount of $69.08 on January 9th and 10th of 2005. The Debtor used the Mastercard account to pay county real estate taxes in the amount of $3,911.96 on January 24, 2005.

10. The Debtor's Mastercard account statement for this period reflects an opening balance of $0.00, and an ending balance of $3,981.04. A minimum monthly payment of $79 was due on or by March 4, 2005. The Debtor testified that he intended to pay these charges but had no explanation of how that would be done. No payments were made on the Mastercard account after the January charges were incurred.

11. At the time the charges were made, the Debtor was unable to meet his existing financial obligations as they came due. The Debtor acknowledged that it was difficult to make his minimum payments on all of his credit card obligations after his wife lost her job. The Debtor also acknowledged that he and his wife stopped making such payments sometime in January or February of 2005.

12. On or about February 1, 2005, seven (7) days after the Debtor used the Mastercard account to pay the real estate taxes, the Debtor met with bankruptcy counsel to discuss his financial situation and the possibility of initiating bankruptcy proceedings.

13. The Debtor did not intend to repay the Mastercard charges.

14. On April 6, 2005, approximately sixty (60) days after his consultation with his bankruptcy counsel, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "<u>Petition Date</u>"). The Debtor also filed his Schedules and Statement of

Financial Affairs on April 6, 2005.

15.     Chase is the holder of an unsecured claim against the Debtor in the amount of $3,981.04.

16.     On July 8, 2005, Chase filed this adversary proceeding seeking to except the entire $3,981.04 balance on the Mastercard account from discharge pursuant to 11 U.S.C. §523(a)(2)(A). Chase further requests that the attorneys' fees and costs relating to prosecution of this action be declared non-dischargeable also.

### III.    LEGAL ANALYSIS

#### A.    Burden of Proof

In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

#### B.    §523(a)(2)(A): False Pretenses or a False Representation

Section 523 of the Bankruptcy Code identifies the circumstances in which certain debts will not be discharged, among them being debts accrued "for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A). In the context of credit card transactions, the

Fifth Circuit has held that the purchase of goods on credit by a debtor who does not intend to pay for them can constitute a false representation under section 523(a)(2)(A). *AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391 (5th Cir. 2001). In *Mercer*, the Fifth Circuit set forth the standard to be applied in determining the non-dischargeability of credit card debts. The *Mercer* guidelines for each of the elements under section 523(a)(2)(A) are discussed below.

## Representation

Each use of a credit card constitutes, as a matter of law, an implied representation by the debtor to the credit card issuer of an intent to pay the debt incurred. *Mercer*, 246 F.3d at 404-407. Each time a card holder uses his credit card he is making both a request to the credit card issuer for a loan against a line of credit and a promise to pay such loan. These promises are implied by the very nature of the transaction and these implied promises to pay are representations under section 523(a)(2)(A).

## Knowingly False

In order for the obligation to be non-dischargeable, the representation must have been knowingly false when made. In the credit card dischargeability context, "[t]he card-use representation of intent to pay is false if there is use without that intent." *Mercer*, 236 F.3d at 408. In other words, "[a] misrepresentation [or the intent to repay] is fraudulent if the maker . . . knows or believes . . . the matter is *not* as represented, or does *not* have the confidence in the accuracy of his representation as stated or implied, or knows . . . he does *not* have the basis for his representation as stated or implied." *Mercer*, 246 F.3d at 407 (citing RESTATEMENT (SECOND) OF TORTS §526) (emphasis in original, internal quotations omitted). In *Mercer*, the Fifth Circuit acknowledged that "a debtor rarely will admit card charges are incurred with the intention of not paying it; therefore a creditor may rely on circumstantial evidence to prove the

debtor's state of mind at card-use." *Mercer*, 246 F.3d at 409.

To determine the debtor's subjective intent, therefore, the Fifth Circuit endorsed the factors adopted by the Ninth Circuit Bankruptcy Appellate Panel in *In re Dougherty*, 84 B.R. 653, 657 (B.A.P. 9th Cir. 1988): (1) the time between card usage and the bankruptcy filing; (2) whether the debtor consulted with a bankruptcy attorney prior to using the card; (3) the number of charges; (4) the amount of the charges; (5) the debtor's financial condition at the time the charges are made; (6) whether the credit limit was exceeded; (7) whether multiple charges were made on the same day; (8) whether the debtor was employed or had employment prospects at the time of the charges; (9) the debtor's financial sophistication; (10) whether the debtor's buying habits suddenly changed; and (11) whether luxuries or necessities were purchased. *Mercer*, 246 F.3d at 408. These "factors are nonexclusive; none is dispositive; nor must the debtor's conduct satisfy a minimum number to constitute fraudulent intent." *Id.*

In addition, "[w]here hopeless insolvency at the time of the purchases makes payment impossible, fraudulent intent *may* be inferred." *Mercer*, 246 F.3d at 408, citing *Sears, Roebuck & Co. v. Boydston (Matter of Boydston)*, 520 F.2d 1098, 1101 (5th Cir. 1975). Hopeless insolvency or an inability to pay at the time the charges are incurred "*may* support finding that the debtor did not intend to pay, but only if the debtor was aware of [his] financial condition and knew [he] *could not* (and therefore did *not* intend to) make even the minimum monthly payment to the issuer." *Mercer*, 246 F.3d at 409 (emphasis in original). *See also LA Capitol Fed. Credit Union v. Melancon (In re Melancon)*, 223 B.R. 300, 321 (Bankr. M.D.La. 1998) ("If the debtor has no idea how the money will get paid back, or if it will get paid back, then he may hope to repay - he may even want to repay - but he certainly does not intend to repay").

In this case, a number of factors suggest that the Debtor's implied representation of intent

to repay was knowingly false when made in January of 2005 and that, under the circumstances, the Debtor could not have reasonably believed that there was any basis for such a representation. For instance, at trial, the Debtor admitted that he had been having financial trouble for at least three years and he was having difficulty meeting his regular monthly obligations. At the time the charges were made, the Debtor had already consulted a bankruptcy lawyer and knew that his financial situation was not getting any better. The Debtor's household income for 2004 was approximately $110,000, and even at this time, while both he and his wife were employed, they were having difficulty meeting their regular monthly obligations.[4] When the Debtor's wife lost her job in December of 2004, the Debtor's household income decreased approximately 40% to only $65,000, and the Debtor's regular monthly expenses, excluding credit card payments for debts already incurred, exceeded his income by at least $1,000 per month. While he had not yet begun preparing his paperwork, he had clearly considered bankruptcy as an alternative prior to incurring the Mastercard debt.

Prior to making the charges, the Debtor had amassed over a $100,000 in credit card debt and had already stopped making the required minimum payments on some of these credit card accounts. Despite these facts, the Debtor paid his real estate taxes on credit using the Mastercard account. Seven days later he consulted his current bankruptcy lawyer, and twelve days after the presumption period for non-dischargeability passed, the Debtor filed for bankruptcy.[5]

---

[4] There is no evidence before the Court as to exactly when in the period preceding the filing that the $100,000 in credit card debt was incurred. There is also no evidence before the Court of the required minimum monthly payment amount on the credit card debt at any time prior to the commencement of this bankruptcy case. However, because the Debtor's income for a few months prior to incurring the Mastercard charges through the date of filing was insufficient, by approximately $1,000, to pay his ordinary living expenses, exclusive of any of the credit card debt, it is apparent that the Debtor was unable to make any payment on newly incurred charges at the time the Mastercard charges were incurred.

[5] The Debtor filed for bankruptcy approximately 72 days after the charges were incurred. At trial Chase argued that all charges within 90 days of the bankruptcy filing should be declared non-dischargeable. This argument suggests that Chase is relying on the current version of section 523(a)(2)(C) of the Bankruptcy Code which provides

Notwithstanding all of this objective evidence, the Debtor testified that his subjective intent was to repay the charges somehow, someday. The Debtor may have hoped to repay, he may even have wanted to repay, but he certainly did not intend to repay the Mastercard charges. He did not know how much credit card debt he owed during this period, or what the required minimum payments on that debt totaled per month. Without a basic understanding of his existing expenses and the existing deficiency in income to expenses, the Debtor could not have been capable of making a reasonable representation with respect to repayment of the Mastercard account. In addition, there was no assurance that his wife would find employment prior to the Mastercard debt becoming due, or that if she did find employment that, her income would be sufficient for the Debtor to meet his financial obligations. The Debtor had no alternative source of cash or assets which could be liquidated to readily meet the existing credit card obligations as they came due or the newly incurred debt with respect to the Mastercard charges. While the Debtor may have truly wanted to repay the Mastercard charges, given his financial situation the Debtor had no basis to support an honest belief that he intended to repay the Mastercard charges. Further, given the weight of the objective factors and the additional fact that the Debtor failed to make any payments on the Mastercard charges prior to filing for bankruptcy, the Court finds and concludes that the Debtor knew his representation of intent to repay the loans was false when made.

---

that debts exceeding $500 which are incurred for luxury goods or services within 90 days of filing are presumed non-dischargeable. The current provision was enacted by Pub. L. No. 109-8 (2005), the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and is applicable only to cases commenced after October 17, 2005. The Debtor's bankruptcy proceeding was commenced on April 6, 2005, thus the current version of the statute is not applicable. The prior version provided that consumer debts exceeding $1,225 for "luxury goods or services" incurred on or within 60 days of a bankruptcy filing were presumed to be non-dischargeable. In this case, the transactions occurred 72 to 87 days prior to the bankruptcy filing. Therefore, there is no presumption of non-dischargeability in this case.

### Intent to Deceive

In *Mercer*, the Fifth Circuit held that if the court determines that the implied representation of use was knowingly false, then, as a matter of law, the requisite intent to deceive is also present. *Mercer*, 246 F.3d at 411 ("[I]f the bankruptcy court finds that, by card-use, [the Debtor] made a knowingly false representation of intent to pay, then the separate intent to deceive is also present"). Accordingly, the Court finds that the Debtor possessed the requisite intent to deceive with respect to the Mastercard charges.

### Actual Reliance

Actual reliance is established as a matter of law if the credit card issuer extends a loan to the Debtor upon his request. *Mercer*, 246 F.3d at 415-16. "In sum, an issuer usually will be able to establish *actual* reliance by showing it would *not* have approved the loan in the absence of [the] debtor's promise to pay (through card-use)." *Id.* (emphasis in original). Having honored the Debtor's request to pay and having actually paid the vendor according to the Debtor's instructions at card-use, Chase has established actual reliance.

### Justifiable Reliance

To establish fraud, false pretenses, or a false representation, the plaintiff must show that its reliance on the debtor's representations was justifiable as well as actual. *Beijing Metals & Minerals Import / Export Corp. v. American Business Ctr., Inc.,* 993 F.2d 1178, 1186 (5th Cir. 1993). Reliance is justifiable "if the *existence* of the intention is *material* and the [credit card] issuer has *reason to believe* it will be carried out. *Mercer*, 246 F.3d at 416, *citing* RESTATEMENT (SECOND) OF TORTS §544. In the context of credit card transactions, "the [credit card] issuer justifiably relies on a representation of intent to pay as long as the account is not in default and

any initial investigations into a credit report do not raise red flags that would make reliance unjustifiable." *Mercer*, 246 F.3d at 421.

In this case, the Mastercard account had a zero balance prior to the January charges. The Mastercard account was not in default, past due, or over the established credit limit. The Debtor's financial condition changed materially in December of 2004, when the Debtor's wife lost her job; however, there was no evidence that Chase was informed of this material change prior to the charges being made. Accordingly, the Court concludes that Chase was justified in relying on the Debtor's implied representation that he intended to repay the loan.

### Damages

The final element that Chase must prove to establish non-dischargeability of the Mastercard charges is that it suffered damages as a result of its reliance of the Debtor's representations. Since the Court has already determined that (i) the Debtor fraudulently misrepresented, by implication, his intent to repay the loan, (ii) Chase actually and justifiably relied on that misrepresentation, and (iii) the amounts have not yet been repaid, the Court finds that the unpaid loan amounts are non-dischargeable. *Mercer*, 246 F.3d at 425 ("If the bankruptcy court finds [the debtor] fraudulently misrepresented her intent to pay and [the creditor] justifiably relied on that misrepresentation, then, as a matter of law, [the creditor's] loss (unpaid loan) resulted from the reliance"). Thus, pursuant to *Mercer*, the Court concludes that Chase suffered losses in the amount of $3,981.04 as a result of its reliance on the Debtor's fraudulent misrepresentations.

### Attorneys' Fees

As to Chase's request for attorneys' fees, as a general rule, the parties to an adversary proceeding must each bear their own costs unless the prevailing litigant has a contractual right to

attorneys fees which is enforceable under state law. *Jordan v. Southeast National Bank (In re Jordan)*, 972 F.2d 221, 227-228 (5th Cir. 1991) overruled on other grounds; *Matter of Coston*, 991 F.2d 257 (5th Cir. 1993); *AT&T Universal Card Services v. Samani (In re Samani),* 192 B.R, 877, 880 (Bankr. S.D.Tex. 1996). In this case, the Credit Agreement provides for the recovery of reasonable attorneys' fees and costs "actually incurred by [Chase] in the collection of any amounts [owed to Chase] under this Agreement." Accordingly, the Court shall hold a hearing, upon notice to the parties, to determine the reasonableness of the attorneys' fees requested.

## V. CONCLUSION

Based on the foregoing, the Court concludes that Chase has sustained its burden of proof under §523(a)(2)(A) and is entitled to a judgment that the charges made by the Debtor on his Mastercard credit card between January 9, 2005 and January 24, 2005 in the amount of $3,981.04 is non-dischargeable under 11 U.S.C. §523(a)(2)(A). An appropriate judgment will be entered in accordance with this opinion.

Signed on 8/11/2006

*Brenda T. Rhoades*     MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE